UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MARTIN BADINELLI,
               Plaintiff,

v.

THE TUXEDO CLUB,
               Defendant.
--------------------------------------------------------------x

**OPINION AND ORDER**

15 CV 6273 (VB)

Briccetti, J.:

    Plaintiff Martin Badinelli brings this diversity action against defendant The Tuxedo Club, for breach of an employment contract between the parties, retaliation in violation of New York Labor Law § 740, and discriminatory discharge based on age in violation of the New York State Human Rights Law.

    Defendant moves to compel arbitration of plaintiff's claims pursuant to New York Civil Practice Law and Rules ("CPLR") Article 75, and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., and to dismiss or stay the action pending arbitration. (Doc. #8).

    For the following reasons, defendant's motion to compel arbitration and stay the action is GRANTED.

    The Court has jurisdiction under 28 U.S.C. § 1332.

## BACKGROUND

    In 2009, plaintiff was hired as General Manager for defendant, a private member-owned country club located in Tuxedo Park, New York. Plaintiff originally signed a one-year employment agreement, which was later orally extended for two additional years. On May 1, 2013, the parties entered into a new written contract, the Employment and Confidentiality Agreement ("Employment Agreement"), which is the subject of this lawsuit.

1

The Employment Agreement was to have governed plaintiff's employment for two years at a base salary of $195,000 for the first year, and $207,500 for the second year. (Doc. #9-1, Employment Agreement, at Schedule A). The Employment Agreement provides that it would "be automatically extended for successive additional two (2) year periods," unless the Tuxedo Club informed Mr. Badinelli otherwise at least six months in advance of the original contract termination date, i.e. by October 30, 2014. (Compl. ¶ 19; Employment Agreement ¶ 3). Plaintiff alleges such notice was to have been provided in writing and sent "by postage prepaid, registered or certified mail" to his home address. (Compl. ¶ 20; Employment Agreement ¶ 15).

In late 2014, plaintiff raised concerns about defendant's "wine purchasing practices . . . that he believed constituted a violation of the [Alcoholic Beverage Control] laws." (Compl. ¶ 111).

Plaintiff alleges on October 23, 2014, he was orally told his employment "was a topic of conversation" at defendant's board meeting. (Compl. ¶ 23). On January 15, 2015, plaintiff was orally informed defendant's board "approved an offer of employment for a new General Manager [and] the offer was accepted." (Id. ¶ 40).

Plaintiff claims he was terminated and replaced by a new general manager in retaliation for complaining about defendant's alleged violations of the Alcoholic Beverage Control laws. In addition, plaintiff alleges the new general manager is 15 years younger than plaintiff, which is part of a "pattern and practice" of age-based discrimination by defendant. (Compl. ¶¶ 117, 119). Finally, plaintiff alleges defendant breached the Employment Agreement because it did not give plaintiff written confirmation of his termination until January 22, 2015, several months after the contract automatically renewed for another two year period.

After plaintiff commenced this action, defendant moved to compel arbitration pursuant to an arbitration provision in the Employment Agreement, which provides:

> **Arbitration of Disputes.** The Company and Employee agree that if any disputes arise between them, except for the exceptions stated below, the disputes will be submitted exclusively to mandatory and binding arbitration. This means that disputes will be decided by an arbitrator, rather than a court and jury, and that Employer and Employee hereby waive their rights to a court or jury trial. <u>The Dispute resolution provision of the Agreement shall govern any arbitration under this Agreement, and such provisions are incorporated herein by the reference.</u>
>
> All disputes between the Company and Employee are covered by this paragraph 10, including claims of wrongful termination, discrimination, harassment, and any injury to Employee's physical, mental or economic interests. All disputes are covered by this paragraph 10, whether based on claim violations or statutory, contractual, common law rights or otherwise.
>
> The only disputes between the Company and Employee not covered by this paragraph 10 are claims for unemployment insurance on workers' compensation claims under the National Labor Relations Act, and disputes giving rise to the Company's rights and remedies pursuant to paragraph 9 above.

(Employment Agreement ¶ 10) (emphasis added).

## DISCUSSION

I. Legal Standards

The FAA[1] declares arbitration agreements to be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

---

[1] Although defendant brought this motion under both the FAA and Article 75 of the CPLR (Def. Br. at 1), elsewhere in its briefing, defendant suggests the FAA may not be applicable because it "only applies to 'a contract evidencing a transaction involving commerce.'" (Def. Reply Br. at 4, n.1). However, the phrase "involving commerce" has been interpreted to the broadest extent possible. Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 277 (1995) (holding the "involving commerce" language of the FAA evidenced an "an intent to exercise Congress' commerce power to the full."). Local employment contracts can clearly be covered. See, e.g., Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001). In any event, the Court agrees

"The FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP, 434 F. Supp. 2d 211, 214–15 (S.D.N.Y. 2006) (internal quotation marks omitted) (emphasis in the original).

However, "the FAA does not require parties to arbitrate when they have not agreed to do so." Volt Info. Scis., Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989). The "principal purpose" of the FAA is "to ensur[e] that private arbitration agreements are enforced according to their terms," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) (internal quotation marks omitted), and an arbitration agreement is interpreted as any other contract would be. See Rent–A–Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67–68 (2010). Thus, the FAA reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. at 339 (internal quotation marks and citations omitted).

"A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010) (citing Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91–92 (2000)); see also Application of Whitehaven S.F., LLC v. Spangler, 45 F. Supp. 3d 333 (S.D.N.Y. 2014) ("consistent with the FAA, the party challenging the agreement . . . bears the burden of proving its invalidity").

---

with defendant that the result would be the same under both the CPLR and the FAA, as both strongly favor enforcing arbitration agreements.

4

When determining whether an agreement to arbitrate is valid, "the general rule is that courts should apply ordinary state-law principles that govern the formation of contracts." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 344 (2d Cir. 2010) (internal quotation marks and citation omitted). See also Schnabel v. Trilegiant Corp., 697 F.3d 110, 119 (2d Cir. 2012) ("Whether or not the parties have agreed to arbitrate is a question of state contract law."). Here, the Employment Agreement provides that New York law governs, and neither party disputes the application of New York law to the question of whether there is a valid agreement to arbitrate.

II. The Agreement to Arbitrate

Plaintiff argues there was no agreement to arbitrate because the arbitration clause referred to a "Dispute resolution" provision that did not exist elsewhere in the Employment Agreement and, as a result, he did not understand the arbitration provision when he signed the Agreement.

A. Missing "Dispute resolution" Provision

Plaintiff first argues there was no enforceable agreement to arbitrate here because "the arbitration provision referred to a 'Dispute resolution' provision, which was not included or set forth in the agreement." (Opp. at 1). He writes:

> The arbitration provision itself does not otherwise set forth a specific procedure as to how the arbitration will be conducted (e.g., the selection of the arbitrator, procedures for conducting the arbitration, and payment of the costs involved), nor does it refer to the rules of any provider of arbitration services such as the American Arbitration Association ("AAA") and Judicial Arbitration and Mediation Services ("JAMS").

(Id.).

As a result, plaintiff contends, "[s]ince there was no meeting of the minds, the arbitration provision is unenforceable as a matter of law." (Opp. at 2).

Plaintiff relies on Dreyfuss v. Etelecare Glob. Sols.–U.S. Inc., 349 F. App'x 551 (2d Cir. 2009) (summary order), to support his argument. There, an employer seeking to compel arbitration submitted the first and last pages of an arbitration agreement, but it was clear at least one and possibly more pages were missing: "The last page is signed by [plaintiff], but the text on the preceding page stops in the middle of a sentence which is not completed on the last page." Id. at 552. The incomplete sentence on the first page began "[e]xcept as otherwise provided in this Agreement . . ." Id. As a result, neither party knew what may have been "otherwise provided" in the agreement. Id. Therefore, the Second Circuit determined, the employer could not "meet its burden of showing that the meeting of the minds necessary for the existence of an enforceable contract took place." Id. at 554.

Although there may be some similarities between this action and Dreyfuss, ultimately the differences are determinative.

First, there is no dispute that the entire agreement was produced here. The pages are numbered one through fourteen, and the sentences carry over from one page to the next in a logical fashion. See Hojnowski v. Buffalo Bills, Inc., 995 F. Supp. 2d 232, 237 (W.D.N.Y. 2014) (distinguishing Dreyfuss because "there is no dispute that the complete agreement has been produced and provided to this Court"); Hudson Specialty Ins. Co. v. N.J. Transit Corp., 2015 WL 3542548, *7 (S.D.N.Y. June 5, 2015) (noting the court in Dreyfuss was "unable to determine what in fact the parties have agreed to") (internal quotations omitted).

Second, here, plaintiff merely contends procedural rules governing the arbitration were lacking. But when procedural rules are not provided to the signatory of an arbitration agreement, the arbitration clause is nevertheless upheld. Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 150 (2d Cir. 2004) ("[W]hile it would have made sense for Deutsche Bank to have explained the

form and to have provided Gold the NASD rules that were incorporated by reference, we do not find on this record that the failure to do so renders the arbitration clause invalid."); Hudson Specialty Ins. Co. v. N.J. Transit Corp., 2015 WL 3542548 at *7 ("Courts within this circuit have routinely rejected the argument that the procedural rules governing arbitration constitute essential terms."); WeWork Companies, Inc. v. Zoumer, 2016 WL 1337280, *5 (S.D.N.Y. April 5, 2016) ("The lack of specific terms governing the arbitration's procedure does not invalidate the agreement."); see also Nardi v. Povich, 824 N.Y.S.2d 764 (N.Y. Cty. 2006) ("[E]ven if Plaintiff did not receive Exhibit A [containing the arbitration provision], it was her responsibility to ensure that she understood the document that she signed."). As a result, "[t]he failure to include specific details on the procedure of the arbitration is not fatal to the clause's validity." WeWork Companies, Inc. v. Zoumer, 2016 WL 1337280 at *5.

That is because the procedural aspects of the arbitration can be decided by the arbitrator. "Once an arbitrator is selected[2] . . . other aspects of the arbitration's procedure, such as discovery and costs, can be decided by the arbitrator." WeWork Companies, Inc. v. Zoumer, 2015 WL 1337280 at *5. See also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) ("[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide.") (internal quotations omitted); Ciago v. Ameriquest Mortg. Co., 295 F. Supp. 2d 324, 330 (S.D.N.Y. 2003) ("Once this Court

---

[2] The Employment Agreement does not specify who shall be the arbitrator of disputes. Under such circumstances, if the parties cannot agree on an arbitrator, they may make an application to the Court to have the Court appoint an arbitrator. 9 U.S.C. §5 ("[U]pon the application of either party to the controversy the court shall designate and appoint an arbitrator."); see also Odyssey Reinsurance Co. v. Certain Underwriters at Lloyd's London Syndicate 53, 615 F. App'x. 22 (2d Cir. 2015) (summary order).

determines that the parties have agreed to arbitrate, the validity and meaning of specific provisions within the Agreement to arbitrate is a matter for the arbitrator to decide.").

For these reasons, the reference to a "Dispute resolution" provision in the arbitration clause that does not exist elsewhere in the contract does not render the arbitration clause unenforceable.

### B. Lack of Understanding

Plaintiff also argues there was no agreement to arbitrate because he did not understand the arbitration provision. Plaintiff claims the arbitration clause "was not discussed with [him]" and his "knowledge and understanding of how a dispute would be arbitrated was not clear to [him]" because the "'Dispute Resolution' provision was not explained to [him]." (Martin A. Badinelli Dec'l at ¶¶ 2, 3). He writes, "[h]aving been satisfied with the monetary terms [of the Employment Agreement], I executed the Agreement regardless of my lack of understanding about how arbitration would work if a dispute arose that warranted resolution." (Id. ¶ 3).

Under generally accepted principles of contract law in New York, "in the absence of fraud or other wrongful act on the part of another contracting party, a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them.'" Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) (quoting Metzger v. Aetna Ins. Co., 227 N.Y. 411, 416 (1920)).

Here, the arbitration clause in question is "broad and plain" and put Badinelli "on notice that any dispute, claim or controversy that may arise between him and his firm could be arbitrable," regardless of whether the rules governing the arbitration were included. Gold v. Deutsche Aktiengesellschaft, 365 F.3d at 150 (internal quotation marks omitted).

Moreover, plaintiff does not contend the Employment Contract itself is invalid or should be nullified because of any fraud or other wrongful act by Tuxedo Club. To the contrary, the

facts as presented by plaintiff suggest he read the agreement and, although he may have had a "lack of understanding" as to some of its terms, he entered into it willingly, knowingly, and without coercion, fraud, duress, or misrepresentation by Tuxedo Club. Even if plaintiff "did not understand the form or had questions about the arbitration clause or the rules . . . the burden was on him to have his concerns addressed before signing." Gold v. Deutsche Aktiengesellschaft, 365 F.3d at 149.

For these reasons, the Court finds plaintiff is presumed to have known and assented to the contents of the Employment Agreement, including the arbitration clause. Accordingly, his "lack of understanding" argument fails.

    III.    <u>Vindication of Statutory Rights</u>

Plaintiff argues in the alternative that "the arbitration provision is unenforceable because . . . the cost[-]prohibitive nature of arbitration hinders Plaintiff from vindicating his statutory rights." (Opp. at 2). He states, "if the parties proceeded with arbitration through the American Arbitration Association . . . the filing fee under the Standard Fee Schedule would be at least $5,000.00 . . . [in addition to] a final fee of $6,200.00." (Id. at 11). Adding in estimated hourly or daily rates for arbitrators, he concludes "the lowest possible arbitration fees . . . would be $14,640 and the highest would be $89,900." (Id. at 12). He compares this to the $400.00 filing fee for bringing his case in court. He argues "[t]his cost differential is so large," that if he has to pay "even half" of the supposed arbitration fees, "he will not be able to effectively vindicate his rights by being compelled to arbitrate his claims." (Id.).

The Supreme Court has recognized the "effective vindication exception" to the FAA would "perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." Am. Exp. Co. v. Italian Colors Rest., 133 S.Ct. 2304,

2310-11 (2013). But the Court nevertheless cast doubt on this "judge-made" exception and held, "the fact that it is not worth the expense involved in <u>proving</u> a statutory remedy does not constitute the elimination of the <u>right to pursue</u> that remedy." <u>Id.</u> at 2311 (emphasis in the original). It therefore held class action waiver provisions that "limit[] arbitration to the two contracting parties" are not invalid even though they may mean that plaintiffs "have no economic incentive to pursue their . . . claims individually in arbitration." <u>Id.</u> at 2310-11.

Here, plaintiff is a well-paid private club manager suing for breach of an employment contract under which he was paid at least $402,500 for two years of work (excluding any bonus he may have received).[3] Plaintiff contends he is owed "in excess of $750,000" pursuant to the contract. (Compl. ¶ 2). Under these circumstances, plaintiff's contention that the arbitration fees would prevent him from pursuing his claims falls flat. Indeed, applying <u>Italian Colors</u>, the Second Circuit rejected a "vindication of statutory rights" argument even where the plaintiff contended the recovery she sought would be "dwarfed by the costs of individual arbitration." <u>Sutherland v. Ernst & Young LLP</u>, 726 F.3d 290, 298 (2d Cir. 2013). The arbitration costs cited by plaintiff here, even if accurate, would not come close to dwarfing plaintiff's potential recovery.

The Court therefore rejects plaintiff's argument that the cost of arbitration would hinder plaintiff from vindicating his rights.

---

[3] Plaintiff's contention that he "was unemployed for seven months, during which time he received no income" (Opp. at 12) is unavailing, as on its face, it suggests he is employed now. In fact, a LinkedIn profile for a Martin A. Badinelli shows he is now the General Manager of The Union League Club in Manhattan (https://www.linkedin.com/in/martin-badinelli-sr-ccm-cce-01ba76611), presumably another well-paid position.

IV.  Staying the Case

It is now settled law in this Circuit that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015). As a result, it is proper to stay, not dismiss, this action pending arbitration.

## CONCLUSION

Defendant's motion to compel arbitration and to stay the action pending arbitration is GRANTED, and the parties are ordered to arbitrate the case pursuant to the terms of the Employment Agreement.

An arbitrator shall be appointed in accordance with the following procedure: By May 9, 2016, the parties shall meet and confer to appoint a single arbitrator to arbitrate plaintiff's claims. If the parties are unable to agree on an arbitrator, by May 16, 2016, each party shall submit ex parte to this Court the names of 5 individuals to arbitrate plaintiff's claims. The list should include each individual's qualifications and should be in order of the party's preferences. The Court will then select an arbitrator taking account of the foregoing, and so advise the parties.

The parties shall inform the Court of the status of the arbitration by July 25, 2016, and every 90 days thereafter. Additionally, within 10 days of completion of the arbitration, the parties shall provide a joint status report to the Court.

The Clerk is instructed to terminate the motion (Doc. #8) and stay this case.

Dated: April 25, 2016
White Plains, NY

SO ORDERED:

*[signature]*

Vincent L. Briccetti
United States District Judge